**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| NEIMAN MARCUS GROUP LTD LLC, *et al.*,[1] | Case No. 20-32519 (DRJ) (Jointly Administered) |
| Reorganized Debtors. | |
| MOHSIN MEGHJI, LIQUIDATING TRUSTEE, | |
| Plaintiff, | Adv. Pro. No. _____ |
| v. | |
| MYT HOLDING LLC, MYT ULTIMATE PARENT, INC., ARES CORPORATE OPPORTUNITIES FUND III, L.P., ARES CORPORATE OPPORTUNITIES FUND IV, L.P., ARES MANAGEMENT LLC, CANADA PENSION PLAN INVESTMENT BOARD (USRE), INC., AND CEDE & CO., | |
| Defendants. | |

**LIQUIDATING TRUSTEE'S
COMPLAINT FOR DECLARATORY RELIEF**

---

[1] The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, are:  Neiman Marcus Group LTD LLC (9435); Bergdorf Goodman Inc. (5530); Bergdorf Graphics, Inc. (9271); BG Productions, Inc. (3650); Mariposa Borrower, Inc. (9015); Mariposa Intermediate Holdings LLC (5829); NEMA Beverage Corporation (3412); NEMA Beverage Holding Corporation (9264); NEMA Beverage Parent Corporation (9262); NM Bermuda, LLC (2943); NM Financial Services, Inc. (2446); NM Nevada Trust (3700); NMG California Salon LLC (9242); NMG Florida Salon LLC (9269); NMG Global Mobility, Inc. (0664); NMG Notes PropCo LLC (1102); NMG Salon Holdings LLC (5236); NMG Salons LLC (1570); NMG Term Loan PropCo LLC (0786); NMG Texas Salon LLC (0318); NMGP, LLC (1558); The Neiman Marcus Group LLC (9509); The NMG Subsidiary LLC (6074); and Worth Avenue Leasing Company (5996).  The Reorganized Debtors' service address is:  One Marcus Square, 1618 Main Street, Dallas, Texas 75201.  On March 31, 2021, the Bankruptcy Court entered an ordered closing each of the chapter 11 cases of Neiman Marcus Group LTD LLC's affiliates, with the chapter 11 case of Neiman Marcus Group LTD LLC remaining open as the lead case [Docket No. 2371].

Plaintiff Mohsin Meghji, in his capacity as trustee ("**Liquidating Trustee**") for the Liquidating GUC Trust (the "**GUC Trust**"), by and through his undersigned counsel, hereby files this *Complaint for Declaratory Relief* (the "**Complaint**") against Defendants MYT Holding LLC ("**MYT Holding**"), MYT Ultimate Parent, Inc. ("**MYT Parent**"), Ares Corporate Opportunities Fund III, L.P., Ares Corporate Opportunities Fund IV, L.P., Ares Management LLC (together, "**Ares**"), Canada Pension Plan Investment Board (USRE) Inc. ("**CPPIB**"), and Cede & Co. (collectively, "**Defendants**"), and alleges as follows:

## PRELIMINARY STATEMENT

1.      The GUC Trust was formed for the benefit of general unsecured creditors in the Reorganized Debtors' bankruptcy cases pursuant to the terms of the *Debtors' Third Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* confirmed by the Bankruptcy Court by order entered September 4, 2020 (the "**Plan**").[2]   On the effective date of the Plan, and in accordance with the Plan settlement resolving claims against, among others, Ares and CPPIB (collectively, the "**Sponsors**"), the Sponsors contributed for the benefit of the GUC Trust 140,000,000 Series B Preferred Units (with a par value of $1.00 per unit at issuance and accruing dividends (the "**Distributions**") at the fixed annual rate of 10% (the "**Distribution Rate**")) issued by MYT Holding that were formerly held by the Sponsors (the "**GUC Trust Units**").   Under the Plan, the Sponsors retained the remaining 110,000,000 Series B Preferred Units and also continued to hold 122,838,315 Class A Common Units issued by MYT Holding.   Cede & Co. is the record holder of 122,838,315 Class B Common Units (which are *pari passu* with the Class A Common Units held by the Sponsors) and 250,000,000 Series A Preferred Units (which are structurally senior to the Series B Preferred Units held by the GUC Trust and the Sponsors).   MYT Holding's

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Plan, LLC Agreement and/or Liquidating Trust Agreement (as such terms are defined herein), as applicable.

membership interests are governed by the *Amended and Restated Limited Liability Company Agreement of MYT Holding LLC* dated September 25, 2020 (the "**LLC Agreement**"), including the "**Series A Terms**" and "**Series B Terms**" attached thereto as Exhibits 1 and 2.

2.      Pursuant to the Plan and the *Liquidating Trust Agreement* dated as of September 23, 2020 approved in connection with the Plan (the "**Liquidating Trust Agreement**"), the Liquidating Trustee was charged with, among other things, monetizing the GUC Trust Units and distributing the proceeds thereof to the beneficiaries of the GUC Trust, the General Unsecured Creditors classified as Classes 10 and 11 under the Plan (the "**GUCs**").[3]

3.      The GUCs collectively hold approximately $500 million in claims that will be paid from the Trust Assets held by the GUC Trust.  The GUC Trust was funded with approximately $10 million in cash and the GUC Trust Units.  The GUC Trust Units are the primary source of recovery for the GUCs in the Reorganized Debtors' bankruptcy cases.  The GUC Trust Units had a par value at issuance of $140 million and accrue Distributions at a Distribution Rate of ten percent (10%) per annum.[4]  As reflected on MYT Holding's books and records, including the 2021 Schedule K-1 issued to the Liquidating Trustee, Distributions on the GUC Trust Units are accruing.  As of June 30, 2022, the value of the GUC Trust Units was $189,090,749.

4.      In accordance with the provisions of the Liquidating Trust Agreement, the Liquidating Trustee has commenced the process of seeking to monetize the GUC Trust Units for the benefit of the GUCs.  In connection with this process, the Liquidating Trustee has undertaken due diligence regarding a disposition of the GUC Trust Units.  Following this diligence, however,

---

[3] *See e.g.,* Plan, Article IV, § D(6); Confirmation Order, ¶ 81; Liquidating Trust Agreement, Article III, §§ 3.1 and 3.3 and Article IV, § 4.1.

[4] Both the Series A Preferred Units and the Series B Preferred Units accrue Distributions at an annual Distribution Rate of 10%.  *See* Series A Terms and Series B Terms, Sections 2.01(a).  The Series A Preferred Units (but not the Series B Preferred Units) are entitled to a 2% increase in the Distribution Rate upon certain triggering events (referred to herein as the "**Trigger Date Distribution Rate Increase**").  *See* Series B Terms, Section 7.02.

the Liquidating Trustee concluded that there exists an issue that impacts the Liquidating Trustee's ability to market and sell the GUC Trust Units in a value-maximizing transaction, and necessitates resolution of the following issue:  Whether the calculation of the amount necessary to redeem the GUC Trust Units in a redemption by MYT Holding under Section 3.07(a) of the Series B Terms includes payments made to holders of the Series A Preferred Units (with the exception of certain Trigger Date Distribution Rate Increases), notwithstanding when such amounts may have been paid to the holders of the Series A Preferred Units.  In other words, in order to maximize the value of the GUC Trust Units for the benefit of the GUCs as contemplated by the Plan, the Liquidating Trustee requires confirmation of his understanding that, with the exception of certain Trigger Date Distribution Rate Increases, any Distributions made to the holders of Series A Preferred Units are included in the calculation of the Redemption Price for the Series B Preferred Units, whether such amounts are paid to the holders of Series A Preferred Units at the time of redemption in full or at any earlier point in time.

5.      A lack of resolution of this issue leaves open the possibility that some party might assert that payments made to Series A Preferred Units prior to the Series A Redemption Date are not counted in the calculation of the Series A Redemption Price (which is utilized to calculate the Redemption Price for the Series B Preferred Units). The issue of how such Distributions will be treated is ripe for determination because MYT Holding has exercised its option to redeem certain Series A Preferred Units (at a Stated Value per unit of $1.00, plus accumulated but unpaid Distributions).  Uncertainty as to how such payments factor into the calculation of the redemption price for the Series B Preferred Units significantly impacts the value that could be obtained for the GUC Trust Units.

6.      Based on the Liquidating Trustee's due diligence and significant experience as a liquidating trustee and expertise with issues related to the market valuation of debt instruments

such as the GUC Trust Units, a lack of resolution with respect to this issue, and the attendant risk, will result in a deeply discounted market valuation for the GUC Trust Units, to the detriment of the GUCs.

7.      Accordingly, by letter dated May 20, 2022, the Liquidating Trustee requested that MYT Holding and the Sponsors confirm their agreement with the Liquidating Trustee that the calculation of the Series A Redemption Price to be utilized under a redemption of the Series B Preferred Units pursuant to Section 3.07(a) of the Series B Terms includes any Distributions paid on account of the Series A Preferred Units at any time at or prior to the Series A Redemption Date (with the exception of any Trigger Date Distribution Rate Increase amounts paid).

8.      On June 6, 2022, the Liquidating Trustee received a response to his request from MYT Holding.  By the response, MYT Holding acknowledged that it "has never in the past taken the position, nor heard of anyone else taking the position, that Distributions made to the holders of the Series A Preferred Units, other than those resulting from a Distribution Rate increase following the occurrence of a Trigger Event, would reduce or limit the amount payable to redeem the Series B Preferred Units."  Further, that MYT Holding was "not aware of any party who has taken the position that the redemption price for the Series B Preferred Units would be reduced or limited if value was provided to the holders of the Series A Preferred Units in the form of Distributions, as opposed to redemption payments."  In other words, MYT Holding acknowledged that it had never *in the past* taken a position contrary to the Liquidating Trustee's interpretation of the provisions of the LLC Agreement regarding the calculation of the Series A Redemption Price used to calculate the Redemption Price in connection with a redemption of the Series B Preferred Units, and was aware of no other party that had taken such contrary position.

9.     MYT Holding further stated, however, that it was not in a position to opine on what position it or any other stakeholders might take *in the future* regarding the interpretation of these provisions.

10.     MYT Holding also indicated that it had consulted with the Sponsors, and that the Sponsors would likewise not provide the requested confirmation regarding the Liquidating Trustee's interpretation of the provisions relating to the calculation of the Series A Redemption Price used to calculate the Redemption Price in connection with a redemption of the Series B Preferred Units.

11.     Following the exchange of correspondence, the Liquidating Trustee, MYT Holding and the Sponsors entered into discussions in an attempt to resolve the dispute, but were unable to reach a resolution.

12.     An acknowledgement that the issue has not been raised in the past, but could be raised in the future, is insufficient to provide the Liquidating Trustee with the certainty necessary to allow him to properly market and sell the GUC Trust Units.  This dispute is exigent and must be resolved in order for the Liquidating Trustee to market the GUC Trust Units with clarity and certainty regarding the fundamental economic benefits pertaining the calculation of the Redemption Price for the Series B Preferred Units in order to maximize the value of the GUC Trust Units for the benefit of GUCs.

13.     A real and justiciable controversy presently exists between the Liquidating Trustee on behalf of the GUC Trust and the Defendants.  Absent the Bankruptcy Court's intervention to resolve this controversy, the parties' dispute will prevent the Liquidating Trustee from obtaining a value-maximizing price for the GUC Trust Units, to the detriment of the GUCs.

14.     Therefore, by this Complaint, the Liquidating Trustee seeks a declaratory judgment that the calculation of the Series A Redemption Price in connection with a redemption under

Section 3.07(a) of the Series B Terms includes any Distributions paid on account of the Series A Preferred Units at any time at or prior to the Series A Redemption Date (with the exception of any Trigger Date Distribution Rate Increase amounts paid).

## JURISDICTION AND VENUE

15.     Section 1334 of Title 28 grants the United States District Court for the Southern District of Texas jurisdiction over this adversary proceeding.  This action has been referred to this Court pursuant to 28 U.S.C. § 157(a). This action is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).  Venue in this adversary proceeding is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

16.     This Court has specifically retained jurisdiction over the GUC Trust, the Liquidating Trustee and the GUC Trust Assets pursuant to the terms of the Liquidating Trust Agreement and the LLC Agreement.  *See* Liquidating Trust Agreement, preamble,[5] Section 3.5[6]

---

[5] The preamble of the Liquidating Trust Agreement provides as follows:  "WHEREAS, the Bankruptcy Court shall have jurisdiction over the Trust, the Trustee, and the Trust Assets as provided herein and in the Plan."

[6] Section 3.5 of the Liquidating Trust Agreement provides as follows:  "Bankruptcy Court Approval of Trustee Actions.  Except as provided in the Plan or otherwise specified in this Agreement, the Trustee need not obtain the order or approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred hereunder, or account to the Bankruptcy Court. Except as otherwise provided herein, the Trustee shall exercise his business judgment for the benefit of the Beneficiaries in order to maximize the value of the Trust Assets and distributions, giving due regard to the cost, risk, and delay of any course of action. Notwithstanding the foregoing, *the Trustee shall have the right to submit to the Bankruptcy Court any question or questions regarding which the Trustee may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the Trust with respect to any of the Trust Assets, this Agreement, or the Plan, including the administration, distribution, or disposition of any of the Trust Assets. The Bankruptcy Court shall retain jurisdiction and power for such purposes and may approve or disapprove any such proposed action upon motion by the Trust.*" (Emphasis added).

and Section 12.16;[7] LLC Agreement, Section 14.11.[8]

17.     The legal predicates for the relief requested herein are 28 U.S.C. § 2201(a), 11 U.S.C. §§ 105 and 541, and Rule 7001 of the Federal Rules of Bankruptcy Procedure.

## THE PARTIES

18.     Plaintiff, Mohsin Meghji, acting in his capacity as Liquidating Trustee pursuant to the Liquidating Trust Agreement, is the duly appointed trustee of the GUC Trust.  The Liquidating Trustee is the holder of 140,000,000 Series B Preferred Units of MYT Holding.  *See LLC Agreement*, Schedule A.

19.     Defendant MYT Holding LLC is organized under the laws of the State of Delaware. MYT Holding's capital structure is comprised of 250,000,000 Series A Preferred Units, 250,000,000 Series B Preferred Units, 122,838,315 Class A Common Units, and 122,838,315 Class B Common Units.  *See LLC Agreement*, Schedule A.

20.     Defendant MYT Ultimate Parent, Inc. is organized under the laws of the State of Delaware.  MYT Parent is the holder of 110,000,000 Series B Preferred Units of MYT Holding

---

[7] Section 12.6 of the Liquidating Trust Agreement provides as follows:  "Jurisdiction.  ***The Bankruptcy Court shall have jurisdiction regarding the Trust, the Trustee, and the Trust Assets, including the determination of all disputes arising out of or related to administration of the Trust. The Bankruptcy Court shall have continuing jurisdiction and venue to hear and finally determine all disputes and related matters arising out of or related to this Agreement or the administration of the Trust. The parties expressly consent to the Bankruptcy Court hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters.***  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Agreement, then the provisions of this Agreement shall have no effect on and shall not control, limit or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction."  (Emphasis added).

[8] Section 14.11 of the LLC Agreement provides for a general venue and submission to jurisdiction in the Court of Chancery of the State of Delaware.  However, there is an explicit carve-out to Delaware Chancery Court jurisdiction in Section 14.11 in connection with disputes relating to the Series B Preferred Units held by the GUC Trust, as follows: "***FOR THE AVOIDANCE OF DOUBT, THE FOREGOING SHALL NOT APPLY TO THE EXTENT EXPRESSLY PROVIDED OTHERWISE IN CONNECTION WITH ENUMERATED RIGHTS AND REMEDIES AVAILABLE TO THE GUC TRUST PURSUANT TO THE TERMS OF THE SERIES B TERMS***." (Emphasis added).

and 122,838,315 Class A Common Units of MYT Holding.  *See LLC Agreement*, Schedule A. Upon information and belief, MYT Parent is 100% owned by Ares and CPPIB.

21.     Defendant Ares Corporate Opportunities Fund III, L.P. is organized under the laws of the State of Delaware.  Upon information and belief, Ares Corporate Opportunities Fund III, L.P. (along with CPPIB) owns and/or controls MYT Parent.

22.     Defendant Ares Corporate Opportunities Fund IV, L.P. is organized under the laws of the State of Delaware.  Upon information and belief, Ares Corporate Opportunities Fund IV, L.P. (along with CPPIB) owns and/or controls MYT Parent.

23.     Defendant Ares Management LLC is organized under the laws of the State of Delaware.  Upon information and belief, Ares Management LLC (along with CPPIB) owns and/or controls MYT Parent.

24.     Defendant Canada Pension Plan Investment Board (USRE), Inc. is organized under the laws of Canada.  Upon information and belief, CPPIB (along with Ares) owns and/or controls MYT Parent.

25.     Defendant Cede & Co. is the nominee of the Depository Trust Company and is organized under the laws of the State of New York.  Cede & Co. is the record holder of 250,000,000 Series A Preferred Units of MYT Holding and 122,838,315 Class B Common Units of MYT Holding.  *See LLC Agreement*, Schedule A.

## **PROCEDURAL BACKGROUND**

26.     On May 7, 2020, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

27.     On September 4, 2020, the Debtors filed the Plan.

28.     On September 4, 2020, the Bankruptcy Court entered the *Order Confirming the Debtors' Third Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1795].

29.     On September 25, 2020, the Plan went effective [Docket No. 1906].

**STATEMENT OF FACTS**[9]

30.     The Reorganized Debtors' confirmed Plan effectuated a settlement with the Sponsors (Ares and CPPIB), pursuant to which potential claims against the Sponsors were resolved.  Pursuant to the Plan settlement, the Sponsors agreed to contribute 140 million Series B Preferred Units of MYT Holding for the benefit of the GUC Trust (the GUC Trust Units).  *See* Plan, Article IV, § A.

31.     As of the effective date of the Plan, and as reflected in Schedule A to the LLC Agreement, MYT Holding had a capital structure as follows:

| Class of Securities | Number | Owner |
|---|---|---|
| Series A Preferred Units | 250,000,000 | Cede & Co. (as record holder for beneficiaries) |
| Series B Preferred Units | 250,000,000 | GUC Trust (140 million) (56%)<br>MYT Parent (110 million) (44%) |
| Common A Units | 122,838,315 | MYT Parent |
| Common B Units | 122,838,315 | Cede & Co. (as record holder for beneficiaries) |

32.     Both the Series A Preferred Units and the Series B Preferred Units were issued for a stated value of $1.00 per unit, each accrue Distributions at a fixed annual Distribution Rate of 10%, and are respectively governed by the Series A Terms and Series B Terms, which are attached as Exhibits 1 and 2 to the LLC Agreement.  As reflected on MYT Holding's books and records,

---

[9] The factual background set forth in the Preliminary Statement section of this Complaint is incorporated in this Statement of Facts as though fully set forth herein.

10

including the 2021 Schedule K-1 issued to the Liquidating Trustee, Distributions on the GUC Trust Units are accruing.  As of June 30, 2022, the value of the GUC Trust Units was $189,090,749.

33.     The Series B Terms (Exhibit 2 to the LLC Agreement) govern MYT Holding's redemption of the Series B Preferred Units.  Section 3.07(a) of the Series B Terms entitles MYT Holding, at any time and from time to time after the "Series A Redemption Date,"[10] to redeem all or part of the outstanding Series B Preferred Units for an amount per unit equal to the "Redemption Price."  *See* Series B Terms, Section 3.07(a), at pp. 7-8.  The term "Redemption Price" is defined in the Series B Terms to mean, with respect to any Series B Preferred Units at any Redemption Date, "an amount per unit equal to the lesser of (a) the Liquidation Preference thereof and (b) the Series A Redemption Price."  *See* Series B Terms, p. 3.

34.     "Liquidation Preference" is defined in the Series B Terms to mean, with respect to the Series B Preferred Units at any date, "the sum of (i) the Stated Value[11] thereof, plus (ii) all accumulated and unpaid Distributions (whether declared or undeclared, and including all such distributions that have compounded pursuant to Section 2.01(a)) thereon through, but not including, such date."  *See* Series B Terms, p. 2.

35.     "Series A Redemption Price" is defined in the Series B Terms, in pertinent part, as follows: "the average amount per unit paid to redeem the Series A Preferred Units, determined as of the Series A Redemption Date, less any payments made in respect of such Series A Preferred

---

[10] "Series A Redemption Date" is defined in the Series B Terms as "the date on which the Series A Preferred Units have been redeemed in full."  *See* Series B Terms, p. 4.

[11] "Stated Value" is defined in the Series B Terms as follows: "at any date of determination, and with respect to each outstanding Series B Preferred Unit, $1.00, adjusted as appropriate in the event of any stock distribution, stock split, stock distribution [*sic*], recapitalization, combination or similar event with respect to the Series B Preferred Units." *See* Series B Terms, p. 4.

Units resulting from an increase in the distribution rate applicable thereto pursuant to Section 8.02 [*sic*][12] of Series A Terms." *See* Series B Terms, p. 4.

36.     On information and belief, the language "lesser of (a) the Liquidation Preference thereof and (b) the Series A Redemption Price" and the definition of Series A Redemption Price in Section 3.07(a) was to ensure that, notwithstanding the Liquidation Preference, holders of Series B Preferred Units not receive more than what is received by holders of Series A Preferred Units, but was not intended to otherwise limit Series B Preferred Unit holders' entitlement to payment of accumulated and unpaid Distributions under a Section 3.07(a) redemption by MYT Holding (except specifically with respect to Trigger Date Distribution Rate Increase amounts).[13]

37.     The Liquidating Trustee is currently seeking to monetize the GUC Trust Units that were provided under the Plan for the benefit of the GUCs.

38.     Following due diligence by the Liquidating Trustee regarding a disposition of the GUC Trust Units, the Liquidating Trustee reached the conclusion that there he would not be able to enter into a value-maximizing transaction without certainty regarding how the amount to be paid to effectuate a Section 3.07(a) redemption of the GUC Trust Units would be calculated.  In light of MYT Holding's redemption of certain Series A Preferred Units (and payment of Distributions thereon), and in order to provide certainty as to the economic terms of the operative documents and thereby maximize the value of these Trust Assets, the Liquidating Trustee sought

---

[12] The reference should read Section 7.02 of the Series A Terms.  The reference to Section 8.02 appears to be a hold-over from the pre-effective date version of the document.  Section 7.02 provides that, in the event of a continuing "Trigger Event" (as defined in Section 7.01 of the Series A Terms), the Distribution Rate on the A Units will be increased by 2% per annum (*i.e.*, from 10% to 12%) (the "***Trigger Date Distribution Rate Increase***").  *See* Series A Terms, Sections 7.01 and 7.02, p. 16.

[13] *See e.g.,* "Key Discussion Points Relating to Terms of Series B Cumulative Preferred Stock," attached as Exhibit D to Exhibit N of the Amended Plan Supplement [Docket No. 1756] setting forth as follows: "Thus, in an optional redemption, a Series B share can never receive more than the average amount actually paid by the Company to redeem a Series A share."

confirmation from MYT Holding and the Sponsors that the Series A Redemption Price calculation under Section 3.07(a) of the Series B Terms includes all Distributions paid on account of the Series A Preferred Units at any time at or prior to the Series A Redemption Date, with the exception of any Trigger Date Distribution Rate Increase amounts paid.

39.     While MYT Holding acknowledged that it had not *to date* taken a position contrary to the Liquidating Trustee's position regarding the redemption calculation under Section 3.07(a), and was aware of no party taking such contrary position, MYT Holding stated that it was not in a position to opine on what position it or any other stakeholders might take *in the future* regarding the interpretation of these provisions.

40.     MYT Holding also indicated that the Sponsors would likewise not provide the requested confirmation regarding the Liquidating Trustee's interpretation of the redemption calculation under Section 3.07(a).

41.     A real and justiciable controversy presently exists between the Liquidating Trustee on behalf of the GUC Trust and the Defendants regarding the calculation of the amount necessary to redeem the Series B Preferred Units under a Section 3.07(a) redemption.

42.     Without a determination by the Bankruptcy Court resolving this dispute, the Liquidating Trustee's ability to obtain a value-maximizing price for these Trust Assets for the benefit of the GUCs as contemplated by the Plan will be materially and negatively impacted.

## CLAIM FOR RELIEF

**(Declaratory Judgment Regarding the Calculation of the
Series A Redemption Price in Connection with a Redemption of the
Series B Preferred Units under Section 3.07(a) of the Series B Terms)**

43.     The Liquidating Trustee repeats and realleges the allegations above as if fully set forth herein.

44.     Based on the foregoing, the Liquidating Trustee requests a declaratory judgment that the calculation of the Series A Redemption Price in connection with a redemption under Section 3.07(a) of the Series B Terms includes any Distributions paid on account of the Series A Preferred Units at any time at or prior to the Series A Redemption Date (with the exception of any Trigger Date Distribution Rate Increase amounts paid).

## PRAYER FOR RELIEF

WHEREFORE, the Liquidating Trustee respectfully requests that the Court enter judgment as follows:

45.     That the calculation of the Series A Redemption Price in connection with a redemption under Section 3.07(a) of the Series B Terms includes any Distributions paid on account of the Series A Preferred Units at any time at or prior to the Series A Redemption Date (with the exception of any Trigger Date Distribution Rate Increase amounts paid); and

46.     Granting such other and further relief as the Court deems just and proper.

Dated: July 11, 2022            By:    */s/ Michael D. Warner*
                                        Michael D. Warner (TX Bar No. 00792304)
                                        **PACHULSKI STANG ZIEHL & JONES LLP**
                                        440 Louisiana Street, Suite 900
                                        Houston, TX 77002
                                        Telephone:  (713) 691-9385
                                        Facsimile:  (713) 691-9407
                                        Email: mwarner@pszjlaw.com

                                        Richard M. Pachulski (CA Bar No. 90073)
                                        Alan J. Kornfeld (CA Bar No. 130063)
                                        10100 Santa Monica Blvd., 13th Floor
                                        Los Angeles, CA  90067
                                        Telephone: (310) 277-6910
                                        Facsimile:  (310) 201-0760
                                        Email:  rpachulski@pszjlaw.com
                                                akornfeld@pszjlaw.com

                                        *Counsel for Mohsin Meghji, in his capacity as trustee of the Liquidating GUC Trust*